# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | **COMPLAINT FOR** |
| | ) | **FORFEITURE *IN REM*** |
| v. | ) | |
| | ) | Civil Action No. 5:18cv81 |
| APPROXIMATELY $21,500 IN FUNDS | ) | |
| SEIZED FROM BRANDEN LEE CARTER | ) | |
| | ) | |
|     Defendant. | ) | |

Now comes the United States of America, Plaintiff herein, by and through R. Andrew Murray, United States Attorney for the Western District of North Carolina, in a civil cause of forfeiture, and respectfully states the following:

## INTRODUCTION

1. This is a civil action *in rem* against approximately $21,500 in United States Currency seized from Branden Lee Carter pursuant to the provisions of 21 U.S.C. §881 and 18 U.S.C. §981 for a violation of 18 U.S.C. §1961(l), which constitutes a specified unlawful activity under 18 U.S.C. §1956(c)(7)(A).

2. This action seeks the forfeiture of all right, title, and interest in the above-captioned property where "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to any offense constituting a "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7) is [also] subject to forfeiture. 18 U.S.C. § 981(a)(1)(C).

3. Procedures for this action are mandated by 21 U.S.C. § 881, 18 U.S.C. §983, 19 U.S.C. §§1602-1621 and, to the extent applicable, the Supplemental Rules for Admiralty or Maritime

Claims and Asset Forfeiture Actions. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§1345 and 1355.

4. This Court has venue in this matter pursuant to 28 U.S.C. §1395.

5. The defendant property has been seized on land, is now within, and during the pendency of this action will remain within the Western District of North Carolina.

6. The Defendant is all present and future interest in the following property:

   a. approximately $21,500 seized from Branden Lee Carter incident to a traffic stop on December 21, 2017.

## FACTUAL BACKGROUND

7. On December 21, 2017, Iredell County Sheriff (ICS), Highway Interdiction Team (HIT), Homeland Security Investigations (HSI), Task Force officers (TFO), were conducting routine interdiction operations on Interstate 77 northbound.

8. ICS Deputy Hicks noticed a 2017 Silver Nissan Frontier truck following too close to another vehicle.

9. ICS Deputy Hicks pulled into traffic in an attempt to catch up with the Nissan truck traveling southbound.

10. As he neared the vehicle, he conducted a NCIC/DCI database check on the Georgia license plate.

11. While waiting for the results from the database, he proceeded to conduct a traffic stop of the Nissan truck for following too closely.

12. During questioning by ICS/TFO, the driver and lone passenger was identified as Branden Lee Carter.

13. During the stop, Deputy Hicks noticed the driver had a pink Enterprise car rental agreement lying on his lap.

14. Deputy Hicks noticed a strong odor of air fresheners and/or cologne emitting from the interior of the vehicle, which is not typical for a rental vehicle.

15. Deputy Hicks asked Carter to exit his vehicle so they could continue speaking in his patrol vehicle.

16. While walking to the patrol vehicle, Deputy Hicks advised Carter that he was unable to retrieve the registration information for the vehicle that he was driving.

17. Carter informed Deputy Hicks that the vehicle was a rental vehicle.

18. While Deputy Hicks and Carter were sitting in the patrol vehicle, Deputy Hicks noticed the response of the registration search on his computer screen.

19. The search revealed that the rental vehicle was registered to "EAN Holdings".

20. Deputy Hicks asked Carter where his trip originated and the location of his destination.

21. Carter responded that he was traveling from Roanoke, VA to Charlotte with the intention to shop at the Premier Outlet mall and see family in Charlotte.

22. Carter further advised that he intended to return to Roanoke on Saturday.

23. Deputy Hicks reports that Carter was overly friendly and very talkative during questioning.

24. Deputy Hicks reports that Carter repeatedly asked questions about how his day was going and if he was busy.

25. Deputy Hicks also checked Carter's driver's license history and learned that Carter had been charged by the Iredell County Sheriff's Office on two different occasions for drug possession.

26. When asked about the previous charges by Deputy Hicks, Carter responded that they were "old charges from back in the day."

27. When asked if he had any illegal contraband in his vehicle, Carter responded "No."

28. When asked if there were any drugs, including marijuana, cocaine, methamphetamine, heroin or any other illegal substance in his vehicle, Carter responded "No."

29. When asked if he was traveling with any "large amounts of US currency", Carter responded that he had no drugs in his vehicle.

30. Carter also stated that everything in his vehicle belonged to him.

31. Deputy Hicks determined that based upon the conflicting answers Carter provided during questioning, and his overall physical demeanor, additional investigation should occur and contacted County Sheriff Lt. Simpson and his drug canine "Abby" for assistance.

32. Lt. Simpson and "Abby" responded to the scene and Carter remained in the front seat of the patrol vehicle.

33. Lt. Simpson directed "Abby" to conduct an open-air stiff of Carter's vehicle.

34. "Abby" showed a positive alert to the presence of narcotics in Carter's vehicle.

35. After Lt . Simpson placed "Abby" in his patrol vehicle, he proceeded to Deputy Hick's patrol vehicle and explained to Carter that due to the positive alert for narcotics, a probable cause search of his vehicle was going to take place.

36. Lt. Simpson continued to talk with Carter while Deputy Hicks conducted the search of the vehicle.

37. During the search, Deputy Hicks discovered two bags lying on the back floor board of the vehicle.

38. The first bag was a Camo Ozark Trail duffle bag which contained clothing.

39. The bag also contained a plastic Walmart bag with an undisclosed amount of US currency.

40. Once the currency was discovered, Deputy Hicks placed the bag on the back seat of the vehicle and returned to his patrol vehicle to speak with Carter.

41. Deputy Hicks informed Carter of his findings and Carter replied, "there was nothing illegal inside."

42. Carter indicated "that money is to go buy a car; I was going to buy a car."

43. Deputy Hicks then specifically asked Carter why he earlier stated that there was no money in the vehicle—Carter did not respond.

44. Deputy Hicks returned to Carter's vehicle to complete the search of the vehicle while Lt. Simpson remained with Carter in the patrol vehicle.

45. The second bag Deputy Hicks discovered was an empty insulated cold bag.

46. While continuing the search of the vehicle, Deputy Hicks also discovered a can of febreze air freshener and a small bottle of cologne in the center console of the vehicle.

47. Deputy Hicks indicated no other contraband was located during the search of Carter's vehicle.

48. Once the search was completed, Deputy Hicks removed the bag with the currency inside from Carter's vehicle and placed it in front of his patrol vehicles camera to record.

49. After videotaping the currency, Deputy Hicks secured the currency inside his patrol vehicle.

50. Lt. Simpson and Deputy Hicks then determined that seizure of the currency was appropriate based on the circumstances present, including :

      a. the large amount of concealed currency in Carter's vehicle;

      b. the positive canine response to the vehicle;

c. Carter's implausible and inconsistent statements, including his failure to answer whether or not he was traveling with currency;

   d. Carter's two different prior arrests and charges of drug possession in lredell County, where Carter does not reside in Iredell County; and

   e. Carter's criminal history involving weapons, assault, burglary and narcotics.

51. Deputy Hicks asked Carter if he would like to follow him back to his office to discuss the currency with an agent from Homeland Security about the currency.

52. Carter responded "Yes" and agreed to speak with the agent.

53. While in route to the office, Lt. Simpson contacted HSI-TFO/Lt. Hawkins to inform him of the discovery of the currency in found in Carter's vehicle.

54. Lt. Hawkins contacted HSI Group Supervisor (GS) Coulston and advised him of the currency.

55. Group Supervisor Coulston then contacted HSI Special Agent (SA) Bass and requested that SA Bass contact Iredell County to assist with the possible seizure of the currency.

56. SA Bass contacted Lt. Simpson and informed him he was en-route to his office to speak with Carter and seize the currency.

57. After Carter, Deputy Hicks, and Lt. Simpson arrived at the ISC Office, Carter was placed in an interview room to wait for the arrival of SA Bass.

58. Deputy Hicks Carter explained to Carter that he was not being detained or under arrest and could leave at any time.

59. Deputy Hicks then informed Carter that his currency was being detained until SA Bass arrived even if he decided to exercise his right to leave.

60. After learning of the detention of the currency, Carter became belligerent and began speaking loudly.

61. Carter requested to make a call to his father.

62. Deputy Hicks again reminded Carter that he was not under arrest and that he could call any one he would like.

63. While Carter was on the phone, he again became very loud and stated the reason he was stopped is because he is a black male.

64. Carter also informed the person on the phone that the police "took his money".

65. Deputy Hicks asked Carter to hang up the phone so he could explain to him the process.

66. Deputy Hicks advised Carter refused to hang up phone and continue talking.

67. Deputy Hicks stated Carter told him that he was not going to speak with anyone or sign any paperwork without an attorney present.

68. While Deputy Hicks continued speaking with Carter, Lt. Simpson conducted trace detection of the currency utilizing the GE Itemiser III.

69. Lt. Simpson conducted swab tests on (4) bundles of US currency seized.

70. The swab test gave a positive alert for cocaine.

71. Carter informed the Officers that he intended to leave the premises.

72. Deputy Hicks provided Carter with a receipt for the currency and explained to him the process of contesting the seizure.

73. Deputy Hicks and Lt. Simpson packaged and sealed the currency inside an evidence bag in front of Carter.

74. Deputy Hicks stated Carter exited the building without any other incident.

75. Lt. Hawkins contacted SA Bass and informed him that he would meet him in Davidson, NC where he could take possession of the sealed evidence bag of currency.

76. SA Bass met Lt. Hawkins in Davidson and took possession of the evidence bag with the currency then transported it to the RAC-Charlotte where it was placed in the evidence vault.

77. On December 22, 2017, SA Bass and Charlotte-Mecklenburg Police Department (CMPD)-HSI/Task Force Officer (TFO) Detective Olmeda transported the currency to Wells Fargo Bank located at 1500 Westinghouse Blvd. Charlotte, NC where employees counted and transferred currency into a cashier's check in the amount of $21,500 paid to the order of US Customs and Border Protection "CBP".

## PRAYER FOR RELIEF

78. By virtue of the foregoing, all right, title, and interest in the defendant property vested in the United States at the time of the commission of the unlawful act giving rise to forfeiture, 21 U.S.C. §881(h), and has become and is forfeitable to the United States of America.

79. Upon information and belief, the following persons may have or claim an interest in the defendant property:

>Branden Lee Carter
>3338 Springtree Drive N.E.
>Roanoke, VA 24012
>
>The Haley Law Firm, LLC
>1007 Pendleton Street
>Greenville, SC 29601

WHEREFORE, the United States of America respectfully prays the

Court that:

(1) a warrant for the arrest of the Defendant be issued;

(2)  due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

(3)  judgment be entered declaring the defendant to be condemned and forfeited to the United States of America for disposition according to law; and

(4)  the United States be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action, including but not limited to the expenses of maintenance and protection of defendant property as required by 28 U.S.C. §1921.

Respectfully submitted, this the 16th Day of May, 2018

**R. ANDREW MURRAY**
**UNITED STATES ATTORNEY**

/s Tiffany Mallory Moore
Assistant United States Attorney
GASB #744522
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
Telephone: (704) 344-6222
Email: tiffany.moore2@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | **COMPLAINT FOR** |
| | ) | **FORFEITURE *IN REM*** |
| v. | ) | |
| | ) | Civil Action No.: |
| APPROXIMATELY $21,500 IN FUNDS | ) | |
| SEIZED FROM BRADEN LEE CARTER | ) | |
| | ) | |
| Defendant. | ) | |

## VERIFICATION

William V. Bass deposes and says under penalty of perjury;

I am a Special Agent with the Department of Homeland Security and one of the agents assigned to this case.

I have read the foregoing Complaint and the factual information contained therein is true according to the best of my knowledge, information, and belief.

_____
Special Agent William V. Bass

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

I certify that William V. Bass personally appeared before me this day, acknowledging to me that he signed the foregoing document.

This the 16th day of May, 2018.

_____
Notary Public

My Commission Expires: 10-3-2020

1